UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARATI ALMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-1868 (RBW) |
| | ) | |
| AD HOC LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

The plaintiff, Barati Almas, brings this civil action against the defendant, Ad Hoc LLC, asserting claims of pay discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C.A. § 206, and the District of Columbia Human Rights Act ("D.C. Human Rights Act" or "DCHRA"), D.C. Code § 2-402.11.  See Complaint ("Compl.") at 1, ECF No. 1.  Currently pending before the Court is the defendant's motion to dismiss the Complaint.  See Defendant Ad Hoc, LLC's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot."), ECF No. 5.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum In Support Of Its Motion To Dismiss Plaintiff's Complaint ("Def.'s Mem."), ECF No. 5-1; (2) the Plaintiff's Memorandum In Opposition To The Defendants' Motion For Summary Judgment, Or In Alternative, Motion To Dismiss ("Opposition" or "Pl.'s Opp'n"), ECF No. 11; and (3) the Defendant's Reply In Support Of Its Motion To Dismiss Plaintiff's Complaint ("Def.'s Reply"), ECF No. 12.

I.   BACKGROUND

A.   **Factual Background**

The plaintiff, "a Black woman," was employed full-time as an "account manager"[2] with Cascades Technologies. Compl. ¶¶ 8–9. The defendant, a digital services company, acquired Cascades Technologies in June 2022 and retained the plaintiff in the same accounting manager position. Id. ¶¶ 2, 14. The plaintiff claims that, after it acquired Cascades Technologies, the defendant compensated her differently than it did two male employees whose jobs and responsibilities were substantially similar to hers. Id. ¶¶ 12, 15–16. Those two male employees (the "comparators") had been employed by Cascades Technologies as "program managers[,]" Compl. at 2; ¶ 15, and according to the plaintiff, upon its acquisition of Cascades Technologies, the defendant provided them with retention bonuses of $75,000, promoted them to "vice presidents" without changing their roles or responsibilities, and paid them "between $70,000 [and] $80,000" more in salary than they paid to the plaintiff. Id. ¶ 16. The plaintiff contends that she did not receive a promotion and was not offered a retention bonus, nor did the only other woman in a management position at the company. See id. ¶¶ 11, 36, 37.

Although they had different job titles, the plaintiff claims that she and the comparators conducted substantially similar work and had substantially similar responsibilities. Id. ¶¶ 24–26. As an accounting manager, the plaintiff represents that she reported to the Executive Director of Personnel and was responsible for "overseeing the accounting department[,] . . . managing the budgets across all programs, acting as the liaison with the federal government for program budgets, and directly advising the company executive of procedure, financial management, and

---

[2] The plaintiff refers to her job title as "account manager[,]" see generally Compl., but the defendant, in its memorandum in support of its motion to dismiss, notes that the plaintiff's job title was "accounting manager[,]" Def.'s Mem. at 2 n.1. Because "accounting manager" seems more in line with how the plaintiff describes her job responsibilities, the Court will refer to her position as an "accounting manager."

policy." Id. ¶¶ 10, 20.  The plaintiff contends that the comparators also reported to the Executive Director of Personnel and were responsible for "oversee[ing] program communication and activities with the [defendant]'s stakeholders" for their respective programs.  Id. ¶¶ 13, 17, 20.  The plaintiff represents that she made "several attempts to reconcile the discriminatory pay," id. ¶ 64, and filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), id. ¶¶ 7, 23. The plaintiff "exhausted [the required] administrative remedies by obtaining a Notice of Right to Sue on March 29, 2024, from the [EEOC]."  Id. ¶ 7.  This lawsuit followed.

**B.     Procedural Background**

On June 27, 2024, the plaintiff filed her Complaint, alleging that the defendant discriminated against her by compensating her less than the male comparators even though her responsibilities are substantially similar to theirs, id. ¶ 69, and that "[n]ot only has [the defendant] discriminated in pay, but it also discriminated in providing retention bonuses and promoting the program managers to vice president titles, when neither of those opportunities were present[ed] to [her,]" id. ¶ 78.  On August 8, 2024, the defendant filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Def.'s Mot. at 1, and on August 28, 2024, the plaintiff filed a memorandum in opposition to the defendant's motion to dismiss, Pl.'s Opp'n at 1.  On September 6, 2024, the defendant filed its reply to the plaintiff's opposition.  Def.'s Reply at 1.

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

3

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint." Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.  ANALYSIS

The plaintiff titles Count I and Count II as "pay discrimination" claims in violation of the Equal Pay Act, see Compl. at 15–16, and Count III and Count IV as "gender discrimination" claims in violation of the DC Human Rights Act, see id. at 17–18. Count I and Count III use the same language to allege discrimination based on the plaintiff being paid $70,000 to $80,000 less in salary than the comparators. Id. ¶¶ 69–77, 84–92. Count II and Count IV use the same

language to allege discrimination based on the plaintiff not receiving the promotion to vice president or the $75,000 retention bonus that the comparators received.  Id. ¶¶ 78–83, 93–98.  Because the gravamen of all four counts is pay inequality, the Court construes all of the counts as pay discrimination claims, rather than gender discrimination claims.  The parties' filings suggest that they do also.

"Gender discrimination" claims under the DCHRA are analyzed using the legal standards of Title VII.  Baker-Notter v. Freedom Forum, Inc., No. 18-cv-2499 (RC), 2019 WL 4601726, at *10 (D.D.C. Sept. 23, 2019).  However, neither party addressed Title VII in their filings.  Rather, both parties assessed all claims using the EPA's framework, in apparent recognition that "claims of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act[,]" Hawley v. Blackboard, Inc., No. 03-cv-656, 2005 WL 513496 (GK), at *8 n.1 (D.D.C. Mar. 3, 2005) (citing Howard Univ. v. Best, 484 A.2d 958, 984 (D.C. 1984)), and the Court will do the same.

The EPA makes it illegal for an employer to:

> discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C.A. § 206(d)(1).  A prima facie EPA claim has two elements: "[(1)] unequal pay and [(2)] working in a 'substantially similar' (i.e., substantially equal) job." Savignac v. Jones Day, 539 F. Supp. 3d. 107, 116 (D.D.C. 2021) ("Savignac II") (quoting Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO, 815 F. 2d 1519, 1524 (D.C. Cir. 1987).  "Equal work" does not mean that the plaintiff's job and the comparator's job must be identical, only that that they must be "substantially equal."  Savignac v. Jones Day ("Savignac I"), 486 F. Supp. 3d 14, 30 (D.D.C.

5

2020) (citations omitted).  "A determination of substantial equality involves an inquiry into whether the jobs are substantially related and substantially similar in skill, effort, responsibility and working conditions."  Goodrich, 815 F. 2d at 1524.  "In applying the term 'equal work,' [c]ourts have been led . . . toward a 'substantially equal' test, a middle course between a requirement that the jobs in question be 'exactly alike' and a requirement that they be merely 'comparable.'"  Equal Emp. Opportunity Comm. v. Am. Pharm. Ass'n, 589 F. Supp. 23, 29 (D.D.C. 1983) (quoting Thompson v. Sawyer, 678 F.2d 257, 271–72 (D.C. Cir. 1982)).

At the pleading stage, this means that "comparability [may be] a starting point," and "courts should not require so much detail about similarity at the front end of a lawsuit[,]" so long as "[the plaintiff] has alleged sufficient facts to make it plausible that she performed 'substantially similar' work requiring the same skill, effort, and responsibility as the male [comparators]."  See Baker-Notter, 2019 WL 4601726, at *9.  Additionally, "'the EPA does not require a plaintiff to plead or prove discriminatory intent' and [ ] EPA plaintiffs are not required to 'anticipate and fend off' affirmative defenses[.]"  Savignac II, 539 F. Supp. 3d at 109 (quoting Savignac I, 486 F. Supp. 3d at 30).  "At the motion to dismiss stage, the only question is whether [the p]laintiff has alleged sufficient facts to state a prima facie case under the EPA."  Savignac I, 486 F. Supp. at 30.

Here, the defendant's argument is that the plaintiff has not stated an EPA claim because she has alleged only an "an impermissible comparable worth claim."  Def.'s Mem. at 1.  "Comparable worth claims" are when the plaintiff makes "a comparison of the intrinsic worth or difficulty of their job with that of other jobs in the same organization or community."  Wash. Cty. v. Gunther, 452 U.S. 161, 166 (1981).  According to the defendant, the plaintiff's claim is merely an allegation that "she was underpaid for an allegedly more difficult position that

6

required more effort[–]the hallmark of an impermissible 'comparable worth' claim which is not cognizable under either the EPA or the DCHRA." Def.'s Mem. at 2. In support of its argument, the defendant claims "[t]he Supreme Court held in Gunther that the EPA (and thus the DCHRA) specifically does not cover 'comparable worth' claims because it would require the courts to engage in 'the impossible task of ascertaining the worth of comparable work, an area in which they have little expertise.'" Id. at 7 (emphasis omitted) (citing Gunther, 452 U.S. at 166, 184).

Putting aside that the defendant's citation to what Gunther held quotes the dissent, its attempt to shoehorn the plaintiff's "equal work" comparisons into a "comparable worth" claim ignores the gravamen of the Complaint by focusing only on the plaintiff's ancillary allegations that her job was more difficult and more demanding. Pl.'s Opp'n at 7–8. Those ancillary allegations alone may not be sufficient to state a claim for relief under the EPA, but they are not the only allegations in the Complaint. See Twombly, 550 U.S. at 555–56; see also Savignac I, 486 F. Supp. 3d at 31–32 (granting a Rule 12(b)(6) motion where the plaintiff did not allege that "she actually performed work 'substantially equal' to the work performed by her male comparators during the relevant period," and only produced "[t]hreadbare recitals of the elements of a[n EPA claim].")

A.  **Whether the Plaintiff Has Adequately Pleaded Pay Discrimination Claims**

In her Complaint, the plaintiff compared the relevant duties, skills, and qualifications between the comparators' program manager positions and her accounting manager position across different categories as outlined below:

"Leadership and Management" Responsibilities:

7

- Accounting Manager: "[M]anage and supervise accounting department employees [and] responsible for day-to-day supervision and leadership"

- Program Manager: "[A]ssemble project teams, assign individual responsibilities, identify appropriate project resources, and provide guidance and direction to team members"

"Finance oversight" Responsibilities:

- Accounting Manager: "[O]versee budget reports, preparation of budgets, and analysis of budgets."

- Program Manager: "[M]anage the project budget"

"Directly report and advise management" Responsibilities

- Accounting Manager: "[R]eport organization's finances to management, and offer suggestions about resource utilization, tax strategies, and assumptions underlying budget forecasts."

- Program Manager: "[P]rovide management with project status updates, feedback, and appropriate reporting on selected projects. . . ."

Compl. ¶ 24. The plaintiff also alleges that both positions required similar "management skills." Id. ¶ 27. The program manager position required the "ability to communicate persuasively with team members, management team, and federal managers" and "manag[ing] multiple interconnected projects with competing priorities," while the accounting manager position required "[e]xcellent written and verbal communication skills" and the ability to "manage employees, while multi-tasking large projects." Id. Further, she represents that both positions require employees in both positions to have a bachelor's degree with three to five years of experience for the program manager position, and four to six years of experience for the accounting manager position. Id. ¶ 29. Based on these comparisons, the plaintiff argued in her Opposition that she has demonstrated that "her position was 'parallel with, and substantially similar to,' her male comparators[,] . . . [but that she] was paid substantially less for a substantially similar position[.]" Pl.'s Opp'n at 4.

8

The Court agrees with the plaintiff that she has alleged facts of sufficient similarity between the two positions to state a claim of discrimination under the EPA because "jobs need not be identical in every respect before the Equal Pay Act is applicable[.]" Laffey v. N.W. Airlines, Inc., 567 F.2d 429, 448–49 (D.C. Cir. 1976). Accepting, as it must, all facts alleged in the Complaint as true, and viewed in a light most favorable to the plaintiff, see Twombly, 550 U.S. at 555–56, the Court concludes that, based on the current record, it appears that "the jobs . . . were at least comparable[,]" Baker-Notter, 2019 WL 4601726, at *8. The presence of factual differences in skill level and responsibility is not fatal to the plaintiff's claim, as the defendant asserts. See Def.'s Mem. at 2. The fact that "the positions oversee two different departments, concerning different subject matters," only demonstrates to the Court at this stage of the case that the jobs are not identical, but identicality is not a prerequisite for a plaintiff to at least enter the door with a viable EPA claim. Compl. ¶¶ 32, 33; see Laffey, 567 F.2d at 448–49.

Although "[i]t [will] take much more detail to prove that [the employees] did in fact have 'substantially similar' jobs, . . . the Court cannot dismiss [the plaintiff's] equal pay claims before giving her an opportunity to make [her] case[.]" Baker-Notter, 2019 WL 4601726 at *9; see also Cornish v. District of Columbia, 67 F. Supp. 3d 345, 361 (D.D.C. 2014) (finding that the plaintiff adequately alleged facts "that she has performed job functions 'that require or entail substantially the same skill, effort, and responsibility' as . . . specifically-referenced [male comparators]" to survive at the motion to dismiss stage).

The Court notes that much of the defendant's motion relies on rulings in prior cases in which this Court or the D.C. Circuit addressed motions for summary judgment regarding whether a plaintiff had properly pleaded an EPA claim. Def.'s Mem. at 9, 11–12; see Goodrich, 815 F.2d at (affirming the district court's finding that no unlawful wage disparity existed after

9

determining at trial whether two jobs were substantially equal); Baker-Notter v. Freedom Forum, Inc., No. 18-2499 (RC), 2022 WL 798382, at *9 (D.D.C. Mar. 15, 2022) (granting summary judgment for the defendant after evidence from each side showed that the jobs in question may have warranted different pay for a number of reasons); Johnson v. Wash. Metro. Area Transit Auth., No. 19-cv-3534 (CRC), 2022 WL 4547527, at *6 (D.D.C. Sept. 29, 2022) (granting summary judgment for the defendant because the defendant met their burden to produce evidence of an affirmative defense that the pay difference was based on a factor other than sex). Although these cases may be more persuasive at a later point in the litigation, they do not defeat the plaintiff's claims at this point where the plaintiff need only "allege[] sufficient facts to state a prima facie case under the EPA." Savignac I, 486 F. Supp. at 30. Because the Court finds that the plaintiff has done so, the defendant's motion to dismiss must be denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes it must deny the defendant's motion to dismiss.

**SO ORDERED** this 3rd day of March, 2026.[3]

REGGIE B. WALTON<br>
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.